FILED

2006 Mar-29  AM 10:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MELISSA BARBEE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-05-BE-0871-S** |
| | ] | |
| **NAPHCARE, INC.; SHERIFF** | ] | |
| **CHRIS CURRY, in his personal and** | ] | |
| **official capacity; CAPTAIN MIKUL** | ] | |
| **SMITHERMAN, in his personal and** | ] | |
| **official capacity,** | ] | |
| | | |
| **Defendants.** | | |

## <u>MEMORANDUM OPINION</u>

### INTRODUCTION

This case is before the court on Defendants Curry's and Smitherman's Motion to Dismiss Plaintiff's Amended Complaint (doc. 23).  For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.  Specifically, the Motion is **GRANTED** with respect to Counts One, Two, Three, Four, and Five, and these Counts are **DISMISSED with prejudice**. The Motion is **DENIED** as to Count Six.

### BACKGROUND

### I.  Procedural History.

Plaintiff Melissa Barbee sued Defendants Naphcare, Inc., Sheriff Mike Curry, and Captain Mikul Smitherman for various claims arising out of her employment with Naphcare, Inc., a private company that contracted to provide medical services at the Shelby County Jail. Specifically, Plaintiff alleges that she was discriminated against because she has biracial children, dates African-American males, and refused to lie during an official Alabama Bureau of Investigation ("ABI") inquiry.  Plaintiff seeks injunctive relief and monetary damages.

Plaintiff filed her original Complaint (doc. 1) on May 2, 2005.  Defendants Curry and Smitherman filed a Joint Motion to Dismiss the Complaint (doc. 5) as to the claims alleged against them.  This Motion was granted by Judge Clemon on July 26, 2005.  Thereafter, the case was transferred to Judge Proctor, who recused himself.  The case was then transferred to this court on August 2, 2005.

On October 10, 2005, Plaintiff filed a Motion to Amend Complaint (doc. 16), which was opposed by Defendants Curry and Smitherman.  After evaluating the submissions, this court ordered Plaintiff to show cause why the Motion to Amend should be granted, since the proposed amended complaint was essentially the same as the original complaint.  Thereafter, Plaintiff filed a Motion to Amend/Correct the First Motion for Leave to File an Amended Complaint (doc. 19).  Attached to that Motion was an Amended Complaint that differed slightly from the first proposed amended complaint.  Notwithstanding Curry's and Smitherman's renewed opposition (doc. 20), the court granted Plaintiff's Motion to Correct the Amended Complaint.  On November 1, 2005, Plaintiff filed the Amended Complaint that is the subject of this memorandum.  Thereafter, Curry and Smitherman filed this Motion to Dismiss.  As grounds for their Motion, Defendants argue that Plaintiff fails to state a claim for which relief can be granted, and that Defendants are entitled to immunity.  The court stayed discovery in this action pending resolution of the Motion to Dismiss.  *See* docs. 28, 24.

**II.  Allegations.**

As required on a Motion to Dismiss, the following allegations are construed as true and resolved in the light most favorable to Plaintiff.

Plaintiff Melissa Barbee is a while female with three biracial children.  At the time relevant to this lawsuit, she worked at the Shelby County Jail providing medical services to

2

inmates.[1]  Part of her duties included administering insulin to inmates.

Also at the time relevant to this lawsuit, Defendant Chris Curry was the Sheriff of Shelby County, and was the director of the Shelby County Correctional Facility.  Defendant Mikul Smitherman was a Captain at the Shelby County Correctional Facility, and was in charge of the day to day operations at the facility.

On May 2, 2004, Plaintiff took her three children to the correctional facility.  The children stayed in the waiting room while Plaintiff administered insulin to some of the inmates.  Some of the officers at the facility noticed that Plaintiff's children were biracial.  In the days following May 2, 2004, white officers began to harass her and discriminate against her.  Additionally, they forced her to work with inmates without proper security to ensure her safety.

During this same time period, an inmate died at the facility.  Shelby County officials alleged that the inmate died from a staph infection.  When questioned by the Alabama Bureau of Investigation ("ABI"), Plaintiff stated that the inmate could not have died from a staph infection because he did not have any open wounds.  Thereafter, the facility staff's harassment and discrimination worsened.  The jail personnel started to threaten her with physical harm and jail time, and forced her to do things that other medical personnel were not required to do.

Ultimately, on or about October 25, 2004, Captain Smitherman informed Plaintiff's supervisor at Naphchare that Plaintiff was no longer allowed on the premises.  Captain Smitherman and Sheriff Curry then fired Plaintiff, and told Barbee's supervisor to fill the vacant employment position.  Naphcare affirmed the decision made by Smitherman and Curry to fire Plaintiff, and acted in concert with these defendants.  Thereafter, Plaintiff sued Defendants,

---

[1]Amend. Compl., ¶¶ 4, 8.  Although slightly ambiguous, it appears that Plaintiff's true employer was Naphcare, and that Naphcare contracted to provide medical services to the jail.

contending that she was fired because (1) she had biracial children; (2) dated African-American males; and (3) did not lie to the ABI about the death of the inmate.

## STANDARD OF REVIEW

"The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is...exceedingly low." *Ancata v. Prison Health Serv's., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (internal quotations omitted).  In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the court must construe all factual allegations as true and resolve them in the light most favorable to the plaintiff.  *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998).  The court may grant the motion only if the court clearly and beyond doubt cannot award the plaintiff relief under any set of facts that could be proved consistent with the allegations of the complaint.  *See Id.* at 735.  "In seeking dismissal for failure to state a viable claim, a defendant thus bears the very high burden of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief."  *Id.* at 735-36.

With respect to immunity, "[t]he defense of sovereign or qualified immunity protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery."  *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004).  The immunity of a governmental official from money damages in actions under 42 U.S.C. § 1983 "is a question of law for the Court to determine."  *Ansley v. Heinrich*, 925 F.2d 1339, 1248 (11th Cir. 1991).  "Until this threshold immunity question is resolved, discovery should not be allowed."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## DISCUSSION

The court notes that this is Plaintiff's third opportunity to file her Complaint. Notwithstanding these multiple opportunities, the Amended Complaint before the court is

4

difficult to follow because of repetitive accusations and allegations, and because the arguments

contained therein are somewhat disjointed.  For organizational purposes, this memorandum will

evaluate each count separately; and, where appropriate, will refer to a previous count's analysis if

it applies.

### I.  Count One:  First and Fourteenth Amendment

Count One of Plaintiff's Amended Complaint asserts claims for denial of privileges and

immunities, due process, and equal protection as secured by the First and Fourteenth

Amendments to the U.S. Constitution.  The only law specified in this Count is Plaintiff's

reference to the First and Fourteenth Amendments.  Defendants argue that Plaintiff does not have

a direct action under the U.S. Constitution.

Section 1983 is the statutory vehicle for bringing constitutional claims against a state

actor before a federal district court.  *See Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir.

1982) (rejecting the plaintiff's Eighth and Fourteenth Amendment claims and stating that "the

effectiveness of [plaintiff's] claim under § 1983 precludes the implication of a direct

constitutional action under the Eighth and Fourteenth Amendments against state officials.")

Plaintiff did not bring these claims under § 1983; rather, she asserted her claims directly under

the First and Fourteenth Amendments.  Plaintiff argues that she can file an action directly under

the United States Constitution, but the cases she cites are distinguishable from this action.  For

example, *Davis v. Passman*, 442 U.S. 228, 238, n. 16 (1979) and *Bivens v. Six Unknown Federal

Narcotics Agents*, 403, U.S. 388, 389 (1971) involved federal defendants, not state defendants;

therefore, the plaintiffs in those cases did not have a remedy under § 1983.  Additionally, *Lewis

v. Case*, 518 U.S. 343 (1996) did not address this precise issue, and in any event, the case giving

rise to this appeal to the U.S. Supreme Court was brought under § 1983.  *See Casey v. Lewis*, 43

F.3d 1261, 1265 (9th Cir. 1994) affirmed in part, vacated in part by *Lewis v. Case*, 518 U.S. 343 (1996).

Because Plaintiff did not assert these Constitutional claims under § 1983, Defendants' Motion to Dismiss Count One is due to be **GRANTED**.

**II.  Count Two:  Civil Rights Act of 1964, as amended; 42 U.S.C. § 1981**

Count Two sets forth claims of discrimination and retaliation under Title VII and § 1981. After reviewing the submissions, the court concludes that Defendant's Motion should be **GRANTED** as to Count Two.

**A.  Title VII**

Plaintiff asserts a Title VII claim against Curry and Smitherman in their official capacities.[2]  Defendants contend that they were not Plaintiff's employers; thus, they contend that Title VII is inapplicable to them.  The issue is whether the Amended Complaint alleges that Curry and Smitherman were Plaintiff's employers.

Title VII protects employees from the discriminatory acts of their *employers*.  *See* 42 U.S.C. 2000e-2 (referring to unlawful "*employer* practices") (emphasis added); *Anduze v. Fla. Atlantic Univ.*, 151 Fed. Appx. 875, 876 (11th Cir. 2005) ("Title VII makes it unlawful for an *employer* to discriminate against any individual...") (emphasis added; internal quotations omitted); *Bass v. Bd. of County Commissioners*, 256 F.3d 1095, 1103 (11th Cir. 2001) (explaining that "Title VII makes it an unlawful employment practice for an *employer* to fail or refuse to hire or to discharge any individual...") (emphasis added; internal quotations omitted).  However, when an employer delegates traditional employer's rights, such as hiring and firing, then a third

---

[2]Plaintiff concedes that she does not have an actionable Title VII claim against Curry and Smitherman in their individual capacities.  *See* Pl.'s Resp. to Mot. to Dismiss, ¶ 21.

party agent may be held liable under Title VII.  *See Williams v. City of Montgomery*, 742 F.2d
586, 589 (11th Cir. 1984).

> The Amended Complaint specifies that:
>
> [Paragraph 6]  At all times material hereto, defendant Chris Curry, was the Sheriff
> of Shelby County, Alabama and was the director of the Shelby County
> Correctional Facility.  He is responsible for the hiring and firing [of] personnel at
> the Shelby County Correctional Facility.
>
> [Paragraph 19] Smitherman and Sheriff Chris Curry fired Barbee and told the
> Barbee's supervisor [sic] to fill her position.

However,  the Amended Complaint also *specifically* alleges that Plaintiff was "an employee of
Naphcare" in paragraphs 33, 40, 43, 50, 54, and 63.  Additionally, Plaintiff alleged that "[t]he
defendant, Naphcare, terminated the [sic] Barbee's employment."  Moreover, Plaintiff inferred
that she was employed by Naphcare in paragraph 20 by referring to Plaintiff's "Naphcare
supervisors."  Based on these excerpts, the court finds that the Amended Complaint fails to assert
that either Curry or Smitherman was Plaintiff's employer.  Accordingly, a claim under Title VII
is inapplicable to these Defendants.

Nor does the Amended Complaint establish a third-party agency relationship that would
support a Title VII claim.  Plaintiff's Response to the Motion to Dismiss argues that Naphcare
"delegated some of its rights to hire and fire said employee to the Shelby County Sheriff and his
staff."[3]  Notwithstanding this assertion in Plaintiff's *Response brief*, nothing in the Amended
Complaint establishes that Naphcare specifically delegated its rights to hire and fire to Curry or
Smitherman.  Three attempts to properly plead a cause of action are enough.  Count Two's Title
VII claims are due to be dismissed.

---

[3]Pl.'s Resp. to Mot. to Dismiss, ¶ 20.

**B.  42 U.S.C. § 1981**

Plaintiff also asserts discrimination and retaliation claims under § 1981.  However, the United States Supreme Court and the Eleventh Circuit have concluded that when the defendant is a state actor, § 1983 is the exclusive remedy for the violation of rights secured by § 1981.  *See Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989) (holding that the "express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"); *Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000) ("[t]his [race discrimination] case requires us to decide whether 42 U.S.C. § 1981 provides a cause of action against state actors. We conclude it does not...");[4] *see also Granger v. Williams*, 200 F. Supp. 2d 1346, 1352 (M.D. Ala. 2002) ("[a]lthough plaintiffs bring their discrimination claims pursuant to both 42 U.S.C. § 1981 and 42 U.S.C. § 1983, the court finds that the claims are due to be merged into a single cause of action under § 1983.")

Curry and Smitherman are state actors.  *See Turquitt v. Jefferson County*, 137 F.3d 1285, 1289 (11th Cir. 1998) (holding that Alabama sheriffs are state, not county officials); *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (determining that "Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.") Accordingly, § 1983 is the exclusive remedy for the violation of the rights at issue in this Count.

---

[4]In concluding that § 1981 claims are not actionable against state actors, the Eleventh Circuit considered and rejected the argument that *Jett* was legislatively overruled by the enactment of the Civil Rights Act of 1991 insofar as Congress amended § 1981 to add subsection c, which provided that "[t]he rights protected by this section are protected against impairment...under color of State law."  *Butts v. County of Volusia*, 222 F.3d 891, 893-95 (11th Cir. 2000).

Defendant's Motion to Dismiss the § 1981 claims in Count Two is **GRANTED**.

### III.  Count Three:  Violation of privacy rights

Count Three alleges constitutional claims for the denial of privileges and immunities, equal protection, due process and the right to privacy as secured by the First and Fourteenth Amendments to the U.S. Constitution.  As stated previously in this memorandum, Plaintiff's constitutional claims are due to be dismissed because they were not brought under § 1983.

Count Three also appears to assert a claim for violation of privacy under state law.[5] Plaintiff concedes that Curry and Smitherman are immune from state claims in their official capacity, but contends that they are not immune from suits in their personal capacity.[6]  Plaintiff claims that Defendants are not entitled to immunity because they acted outside their authority.[7]

The Alabama Constitution states that "[t]he State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const., Art. I, § 14.  This absolute immunity has been extended to jailers as well as sheriffs.  S*ee Lancaster v. Monroe County*, 116 F.3d 1419, 1430 (11th Cir. 1997) (extending absolute immunity to sheriff's jailers); *Vinson v. Clarke County*, 10 F. Supp. 2d 1282, 1295 n. 10 (S.D. Ala. 1998) (noting that a jailer "is an employee of the state...and a legal extension of the Sheriff; he helps carry out the statutory duties assigned to Sheriffs.  Therefore, a jailer is entitled to the same immunities").  Further, the absolute immunity available to sheriffs and jailers under § 14 is applicable to tort claims asserted against them both in their official and individual capacities.  *See Tinney v. Shores*, 77 F3d. 378, 383 (11th Cir. 1996)

---

[5]Amend. Compl., ¶ 41 (asserting a claim for the "common law right to privacy").

[6]Pl.'s Resp. to Defs.' Mot. to Dismiss, ¶¶ 7, 8.

[7]The court considered the case law Plaintiff offered in support of this contention, but did not find it persuasive because (1) they were stated cases; and (2) were decided before the Eleventh Circuit's holdings in *Tinney* and *McMillan*.

(with respect to claims for conversion and trespass, "[u]nder Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state").  Section 14 immunity also bars tort claims that are premised on malicious or intentional conduct.  *See McMillan v. Johnson*, 88 F.3d 1554, 1571-72 (11th Cir. 1996) (noting the conflicting rulings in Alabama state courts and the confusion in *Tinny v. Shores*, but holding that as to claims for malicious prosecution, abuse of process, and outrage, "under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity.")

Pursuant to the Eleventh Circuit's holdings in *Tinney* and *McMillan*, the court finds that Curry and Smitherman have absolute immunity from this claim.[8]

Moreover, even if Defendants were not immune, "the tort of invasion of privacy [is defined] as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Crucher v. Wendy's of North America, Inc.*, 857 So. 2d 82, 95-96 (Ala. 2003).  In Alabama, this tort consists of four limited and distinct wrongs: "(1) intruding into plaintiff's physical solitude or seclusion; (2) giving publicity to private information about plaintiff that violates ordinary decency; (3) putting plaintiff in false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of plaintiff's personality for commercial use."  *Key v.*

---

[8]Plaintiff might have a better claim if her state law privacy claim requested injunctive relief, because § 14 immunity does not apply to sheriffs for actions brought (1) to compel him to perform his duties; (2) to compel him to perform ministerial acts; (3) to enjoin him from enforcing unconstitutional laws; (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law; or (5) to seek construction of a statute under the Declaratory Judgment Act.  *See Ex parte Davis*; 2005 WL 3082778 * 4 (Ala. 2005). However Count Three specifically demands "compensation and punitive damages," and the General Prayer for relief requests injunctive relief only as to Plaintiff's discrimination and retaliation claims.

*Compass Bank, Inc.*, 826 So. 2d 159, 164 (Ala. Civ. App. 2001).  A defendant is liable for intruding into one's physical solitude or seclusion only when it intrudes into a private place, or has "invaded a private seclusion that the plaintiff has thrown about his person or affairs."  *Id*.  "The wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, by discovering the plaintiff's private affairs through wiretapping or eavesdropping, or by some investigation into the plaintiff's private concerns, such as opening private mail or examining a private bank account."  *Id*.

The Amended Complaint alleges that "[t]he defendants denied...Barbee's common law right to privacy, by preventing Barbee from working at the public jail because she has biracial children and/or because she dates African-American males."  Even if Defendants were not immune from suit, the Amended Complaint does not aver facts that satisfy the elements for invasion of privacy.  Accordingly, Defendants' Motion to Dismiss Count Three is **GRANTED**.

### IV.  Count Four:  Retaliation

Count Four asserts a claim for retaliation based on the exercise of free speech,[9] but does not specify any statute to support this claim.  As stated previously in this memorandum, the vehicle for bringing this type of constitutional claim before the court is 42 U.S.C. § 1983.  Because Plaintiff did not articulate § 1983 as a basis for this claim, the Motion to Dismiss is due to be **GRANTED**.[10]

---

[9]The "free speech" at issue refers to the statement Plaintiff gave to the ABI concerning the inmate who allegedly died from a staph infection. *See* Amend Compl., ¶¶ 45, 47, 48.

[10]The court notes that the Amended Complaint utilizes Title VII and § 1981 as grounds for other claims.  However, as stated previously, Title VII does not apply in this case because the Amended Complaint does not allege that Curry and Smitherman were Plaintiff's employers.  Section 1981 does not apply because Curry and Smitherman are state actors, and where a defendant is a state actor, § 1983 provides the sole remedy for the violation of rights secured by § 1981.  *See Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989); *Butts v. County*

Even assuming, *arguendo*, that the Amended Complaint specified § 1983 as the basis for Count Four, this claim still fails.  Government officials may be shielded from civil liability if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  The U.S. Supreme Court has held that a "necessary concomitant to the question of whether a plaintiff has alleged a violation of a clearly-established federal right is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."  *Maggio v. Sipple*, 211 F.3d 1346, (11th Cir. 2000) (internal quotations omitted).  A public employee's right to free speech is not absolute.  *See Bryson v. city of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).  For a public employee's speech to constitute protected speech, it must (1) address a matter of public concern; and (2) the speaker's interest must outweigh the government's interest in promoting the efficiency of the public services.  *See Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 574-75 (1968).  To address a matter of public concern, the speech "must relate to any matter of political, social, or other concern to the community."  *Maggio*, 211 F.3d at 1352. "If the government employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  *Id.*; citing *Connick*, 461 U.S. at 147.   "The relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is *whether the purpose of the plaintiff's speech was to raise issues of public concern*."  *Id*. at 1353 (internal quotations omitted) (emphasis added).  To determine the purpose of the speech, the court examines the

---

*of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000).

"content, form, and context" of the statement.  *Morris v. Crow*, 142 F.3d 1379, 1382 (11th Cir. 1998) (citing *Connick*, 461 U.S. at 147-48) (applying this standard to a motion for summary judgment).

The Amended Complaint alleges that Plaintiff, when questioned about the inmate who died, "informed the *Alabama Bureau of Investigation*...that the inmate could not have died from a staff infection because he did not have any open wounds."[11]  Count Four also contains allegations that Plaintiff told the ABI "what she had observed and seen on the night of the death of the inmate"[12] and that the inmate "had no open wounds when she examine [sic] him."[13]  Count Four does not contain allegations that the purpose of the speech at issue was to "raise issues of public concern."  Examining the content, form, and context of Plaintiff's alleged speech, the court finds that Plaintiff made the statements directly to ABI investigators in response to their official investigation, and not to raise an issue of public concern.  Because Plaintiff failed to establish that the speech at issue was protected speech, Plaintiff has not alleged a First Amendment violation.  Consequently, the Motion to Dismiss Count Four should be **GRANTED**.

### V.  Count Five:  42 U.S.C. § 1981

Count Five sets forth claims of discrimination and denial of equal protection under § 1981.  As stated previously in this memorandum, discrimination and constitutional claims against state actors must be brought under § 1983.  Defendant's Motion as to Count Five is due to be **GRANTED**.

---

[11]Amend. Compl., ¶ 14 (emphasis added).

[12]*Id.*, ¶ 45; *see also* ¶ 48.

[13]*Id.*, ¶ 47.

**VI.  Count Six:  42 U.S.C. § 1983**

Count Six states a claim for violating the equal protection clause of the Fourteenth Amendment.  Count Six also specifies § 1983 as the vehicle for this claim.  Plaintiff apparently concedes that her claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment.[14]  However, she argues that she still has a valid claim under § 1983 against Defendants in their individual capacities.

Curry and Smitherman state that in Count 6 Plaintiff "properly raises a constitutional claim...."[15]  However, they argue that this Count fails to state a claim against Curry and Smitherman because Plaintiff fails to allege which defendants she is referring to when she asserts "the defendants" terminated her.[16]  Moreover, Curry and Smitherman contend that because Plaintiff worked for Naphcare (as alleged throughout the Amended Complaint), they could not have terminated her as alleged in Count Six.

Plaintiff's use of the term "defendants" incorporates all defendants.  Accordingly, Count Six sufficiently identifies both Curry and Smitherman as parties against whom Plaintiff is seeking relief under § 1983.  Further, § 1983 does not require that Defendants be Plaintiff's employer; it is enough if they conspired with Naphcare to terminate Plaintiff in violation of her constitutional rights.  This claim is sufficiently pled to survive a Motion to Dismiss; and, accordingly, Defendants' Motion as to Count Six is **DENIED**.

---

[14]Resp., ¶ 1 (stating that "[t]he 11th Amendment does not bar suits for *equitable* relief against state officers in their official capacity...") (emphasis added).

[15]Mot. to Dismiss, p. 25.

[16]*Id*., p. 26.

**CONCLUSION**

Defendants' Motion to Dismiss is **GRANTED** with respect to Counts One, Two, Three, Four, and Five.  Because this is Plaintiff's third opportunity to articulate a case against Defendants Curry and Smitherman, Counts One through Five are **DISMISSED with prejudice**. Defendants' Motion to Dismiss is **DENIED** as to Count Six's constitutional claim under 42 U.S.C. § 1983.

DONE and ORDERED this 29th day of March, 2006.


_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE