FILED

2007 Aug-09  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MELISSA BARBEE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-05-BE-0871-S** |
| | ] | |
| **NAPHCARE, INC.; SHERIFF** | ] | |
| **CHRIS CURRY, in his personal and** | ] | |
| **official capacity; CAPTAIN MIKUL** | ] | |
| **SMITHERMAN, in his personal and** | ] | |
| **official capacity,** | ] | |
| | | |
| **Defendants.** | | |

## <u>REVISED MEMORANDUM OPINION</u>

This case is before the court on Defendants Curry's and Smitherman's Motion to Dismiss Plaintiff's Amended Complaint (doc. 23).   On March 29, 2007, this court issued its original ruling, granting in part and denying in part Defendants' motion.  Specifically, the court granted the motion with respect to all claims except Count Six, a claim for racial discrimination under 42 U.S.C. § 1983, based on her allegations that she was terminated because she has biracial children.  Defendants then appealed this court's denial of their motion to dismiss as to Count Six.

On February 6, 2007, the Court of Appeals vacated and remanded this court's original order and memorandum opinion on Defendants' motion to dismiss.  The Court of Appeals remanded the case for further proceedings to determine whether the motion to dismiss properly raised qualified immunity as a defense to Count Six and, if so, instructed this court to apply the two-part test for qualified immunity, set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Having ordered the parties to brief the qualified immunity issue as it applies to Count Six, the court now issues the following revised memorandum opinion.  A separate revised order will be

entered contemporaneously with this opinion.

For the reasons set forth below, Defendants' motion is **GRANTED in part** and **DENIED in part**.  The court hereby readopts the portions of its memorandum opinion related to Counts One, Two, Three, Four, and FIVE.  Specifically, the motion is **GRANTED** with respect these Counts, and they are **DISMISSED with prejudice**.  In addition, the court readopts *and expands upon* its original reasoning regarding Count Six.  The motion is **DENIED** as to Count Six.

**BACKGROUND**

**I.      Procedural History.**

Plaintiff Melissa Barbee sued Defendants Naphcare, Inc., Sheriff Mike Curry, and Captain Mikul Smitherman for various claims arising out of her employment with Naphcare, Inc., a private company that contracted to provide medical services at the Shelby County Jail. Specifically, Plaintiff alleges that she was discriminated against because she has biracial children, dates African-American males, and refused to lie during an official Alabama Bureau of Investigation ("ABI") inquiry.  Plaintiff seeks injunctive relief and monetary damages.

Plaintiff filed her original Complaint (doc. 1) on May 2, 2005.  Defendants Curry and Smitherman filed a Joint Motion to Dismiss the Complaint (doc. 5) as to the claims alleged against them.  This Motion was granted by Judge Clemon on July 26, 2005.  Thereafter, the case was transferred to Judge Proctor, who recused himself.  The case was then transferred to this court on August 2, 2005.

On October 10, 2005, Plaintiff filed a Motion to Amend Complaint (doc. 16), which was opposed by Defendants Curry and Smitherman.  After evaluating the submissions, this court

ordered Plaintiff to show cause why the Motion to Amend should be granted, since the proposed amended complaint was essentially the same as the original complaint. Thereafter, Plaintiff filed a Motion to Amend/Correct the First Motion for Leave to File an Amended Complaint (doc. 19). Attached to that Motion was an Amended Complaint that differed slightly from the first proposed amended complaint. Notwithstanding Curry's and Smitherman's renewed opposition (doc. 20), the court granted Plaintiff's Motion to Correct the Amended Complaint. On November 1, 2005, Plaintiff filed the Amended Complaint that is the subject of this memorandum. Thereafter, Curry and Smitherman filed this Motion to Dismiss. As grounds for their Motion, Defendants argue that Plaintiff fails to state a claim for which relief can be granted, and that Defendants are entitled to immunity. The court stayed discovery in this action pending resolution of the Motion to Dismiss. *See* docs. 28, 24.

## II.   Allegations.

As required on a Motion to Dismiss, the following allegations contained in Plaintiff's Amended Complaint are construed as true and resolved in the light most favorable to Plaintiff.

Plaintiff Melissa Barbee is a white female with three biracial children. At the time relevant to this lawsuit, she worked at the Shelby County Jail providing medical services to inmates.[1] Part of her duties included administering insulin to inmates.

Also at the time relevant to this lawsuit, Defendant Chris Curry was the Sheriff of Shelby County, and was the director of the Shelby County Correctional Facility. Defendant Mikul Smitherman was a Captain at the Shelby County Correctional Facility, and was in charge of the day-to-day operations at the facility.

---

[1]Amend. Compl., ¶¶ 4, 8. Although slightly ambiguous, it appears that Plaintiff's true employer was Naphcare, and that Naphcare contracted to provide medical services to the jail.

On May 2, 2004, Plaintiff took her three children to the correctional facility.  The children stayed in the waiting room while Plaintiff administered insulin to some of the inmates.  Some of the officers at the facility noticed that Plaintiff's children were biracial.  In the days following May 2, 2004, white officers began to harass her and discriminate against her.  Additionally, they forced her to work with inmates without proper security to ensure her safety.

During this same time period, an inmate died at the facility.  Shelby County officials alleged that the inmate died from a staph infection.  When questioned by the Alabama Bureau of Investigation ("ABI"), Plaintiff stated that the inmate could not have died from a staph infection because he did not have any open wounds.  Thereafter, the facility staff's harassment and discrimination worsened.  The jail personnel started to threaten her with physical harm and jail time, and forced her to do things that other medical personnel were not required to do.

Ultimately, on or about October 25, 2004, Captain Smitherman informed Plaintiff's supervisor at Naphchare that Plaintiff was no longer allowed on the premises.  Captain Smitherman and Sheriff Curry then fired Plaintiff, and told Barbee's supervisor to fill the vacant employment position.  Naphcare affirmed the decision made by Smitherman and Curry to fire Plaintiff, and acted in concert with these defendants.  Thereafter, Plaintiff sued Defendants, contending that she was fired because (1) she had biracial children; (2) dated African-American males; and (3) did not lie to the ABI about the death of the inmate.  Plaintiff brought this lawsuit for violation of the First and Fourteenth Amendment; violation of the Civil Rights Act of 1964, as amended and of 42 U.S.C. § 1981; violation of her "privacy rights"; retaliation; and civil rights conspiracy under 42 U.S.C. § 1983.

4

## STANDARD OF REVIEW

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a).  A plaintiff must provide the grounds of his entitlement, but Rule 8 does not require "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.  In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

## DISCUSSION

The court notes that Plaintiff has had three opportunities to draft her Complaint. Notwithstanding these multiple opportunities, the Amended Complaint before the court is difficult to follow because of repetitive accusations and allegations, and because the arguments contained therein are somewhat disjointed.  For organizational purposes, this memorandum will evaluate each count separately; and, where appropriate, will refer to a previous count's analysis if it applies.

### I.      Count One:  First and Fourteenth Amendment

Count One of Plaintiff's Amended Complaint asserts claims for denial of privileges and

5

immunities, due process, and equal protection as secured by the First and Fourteenth Amendments to the U.S. Constitution.  The only law specified in this Count is Plaintiff's reference to the First and Fourteenth Amendments.  Defendants argue that Plaintiff does not have a direct action under the U.S. Constitution.

Section 1983 is the statutory vehicle for bringing constitutional claims against a state actor before a federal district court**.**  *See Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982) (rejecting the plaintiff's Eighth and Fourteenth Amendment claims and stating that "the effectiveness of [plaintiff's] claim under § 1983 precludes the implication of a direct constitutional action under the Eighth and Fourteenth Amendments against state officials.")  Plaintiff did not bring these claims under § 1983; rather, she asserted her claims directly under the First and Fourteenth Amendments.  Plaintiff argues that she can file an action directly under the United States Constitution, but the cases she cites are distinguishable from this action.  For example, *Davis v. Passman*, 442 U.S. 228, 238, n. 16 (1979) and *Bivens v. Six Unknown Federal Narcotics Agents*, 403, U.S. 388, 389 (1971) involved federal defendants, not state defendants; therefore, the plaintiffs in those cases did not have a remedy under § 1983.  Additionally, *Lewis v. Case*, 518 U.S. 343 (1996) did not address this precise issue, and in any event, the case giving rise to this appeal to the U.S. Supreme Court was brought under § 1983.  *See Casey v. Lewis*, 43 F.3d 1261, 1265 (9th Cir. 1994) affirmed in part, vacated in part by *Lewis v. Case*, 518 U.S. 343 (1996).

Because Plaintiff did not assert these Constitutional claims under § 1983, and has no direct action under the Constitution, Defendants' Motion to Dismiss Count One is due to be **GRANTED**.

> **II.     Count Two:  Civil Rights Act of 1964, as amended; 42 U.S.C. § 1981**

Count Two sets forth claims of discrimination and retaliation under Title VII and § 1981. After reviewing the submissions, the court concludes that Defendant's Motion should be **GRANTED** as to Count Two.

### A.    Title VII

Plaintiff asserts a Title VII claim against Curry and Smitherman in their official capacities.[2]  Defendants contend that they were not Plaintiff's employers; thus, they contend that Title VII is inapplicable to them.  The issue is whether the Amended Complaint alleges that Curry and Smitherman were Plaintiff's employers.

Title VII protects employees from the discriminatory acts of their *employers*.  *See* 42 U.S.C. 2000e-2 (referring to unlawful "*employer* practices") (emphasis added); *Anduze v. Fla. Atlantic Univ.*, 151 Fed. Appx. 875, 876 (11th Cir. 2005) ("Title VII makes it unlawful for an *employer* to discriminate against any individual...") (emphasis added; internal quotations omitted); *Bass v. Bd. of County Commissioners*, 256 F.3d 1095, 1103 (11th Cir. 2001) (explaining that "Title VII makes it an unlawful employment practice for an *employer* to fail or refuse to hire or to discharge any individual...") (emphasis added; internal quotations omitted).  However, when an employer delegates traditional employer's rights, such as hiring and firing, then a third party agent may be held liable under Title VII.  *See Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984).

The Amended Complaint specifies that:

[Paragraph 6]  At all times material hereto, defendant Chris Curry, was the Sheriff of Shelby County, Alabama and was the director of the Shelby County Correctional Facility.  He is responsible for the hiring and firing [of] personnel at the Shelby County Correctional Facility.

---

[2]Plaintiff concedes that she does not have an actionable Title VII claim against Curry and Smitherman in their individual capacities.  *See* Pl.'s Resp. to Mot. to Dismiss, ¶ 21.

> [Paragraph 19] Smitherman and Sheriff Chris Curry fired Barbee and told the
> Barbee's supervisor [sic] to fill her position.

However, the Amended Complaint also *specifically* alleges that Plaintiff was "an employee of
Naphcare" in paragraphs 33, 40, 43, 50, 54, and 63. Additionally, Plaintiff alleged that "[t]he
defendant, Naphcare, terminated the [sic] Barbee's employment." Moreover, Plaintiff inferred
that she was employed by Naphcare in paragraph 20 by referring to Plaintiff's "Naphcare
supervisors." Based on these excerpts, the court finds that the Amended Complaint fails to assert
that either Curry or Smitherman was Plaintiff's employer. Accordingly, a claim under Title VII
is inapplicable to these Defendants.

Nor does the Amended Complaint establish a third-party agency relationship that would
support a Title VII claim. Plaintiff's Response to the Motion to Dismiss argues that Naphcare
"delegated some of its rights to hire and fire said employee to the Shelby County Sheriff and his
staff."[3] Notwithstanding this assertion in Plaintiff's *Response brief*, nothing in the Amended
Complaint alleges that Naphcare specifically delegated its rights to hire and fire to Curry or
Smitherman. Three attempts to properly plead a cause of action are enough. Count Two's Title
VII claims are due to be dismissed.

### B.    42 U.S.C. § 1981

Plaintiff also asserts discrimination and retaliation claims under § 1981. However, the
United States Supreme Court and the Eleventh Circuit have concluded that when the defendant is
a state actor, § 1983 is the *exclusive* remedy for the violation of rights secured by § 1981. *See
Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989) (holding that the "express
action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities

---

[3]Pl.'s Resp. to Mot. to Dismiss, ¶ 20.

8

secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"); *Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000) ("[t]his [race discrimination] case requires us to decide whether 42 U.S.C. § 1981 provides a cause of action against state actors. We conclude it does not...");[4] *see also Granger v. Williams*, 200 F. Supp. 2d 1346, 1352 (M.D. Ala. 2002) ("[a]lthough plaintiffs bring their discrimination claims pursuant to both 42 U.S.C. § 1981 and 42 U.S.C. § 1983, the court finds that the claims are due to be merged into a single cause of action under § 1983.")

Curry and Smitherman are state actors.  *See Turquitt v. Jefferson County*, 137 F.3d 1285, 1289 (11th Cir. 1998) (holding that Alabama sheriffs are state, not county officials); *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (determining that "Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.") Accordingly, § 1983 is the exclusive remedy for the violation of the rights at issue in this Count. Defendant's Motion to Dismiss the § 1981 claims in Count Two is **GRANTED**.

### III.    Count Three:  Violation of privacy rights

Count Three alleges constitutional claims for the denial of privileges and immunities, equal protection, due process and the right to privacy as secured by the First and Fourteenth Amendments to the U.S. Constitution.  As stated previously in this memorandum, Plaintiff's constitutional claims are due to be dismissed because they were not brought under § 1983.

---

[4]In concluding that § 1981 claims are not actionable against state actors, the Eleventh Circuit considered and rejected the argument that *Jett* was legislatively overruled by the enactment of the Civil Rights Act of 1991 insofar as Congress amended § 1981 to add subsection c, which provided that "[t]he rights protected by this section are protected against impairment...under color of State law."  *Butts v. County of Volusia*, 222 F.3d 891, 893-95 (11th Cir. 2000).

Count Three also appears to assert a claim for violation of privacy under state law.[5] Plaintiff concedes that Curry and Smitherman are immune from state claims in their official capacity, but contends that they are not immune from suits in their personal capacity.[6]  Plaintiff claims that Defendants are not entitled to immunity because they acted outside their authority.

The Alabama Constitution states that "[t]he State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const., Art. I, § 14.  This absolute immunity has been extended to jailers as well as sheriffs.  S*ee Lancaster v. Monroe County*, 116 F.3d 1419, 1430 (11th Cir. 1997) (extending absolute immunity to sheriff's jailers); *Vinson v. Clarke County*, 10 F. Supp. 2d 1282, 1295 n. 10 (S.D. Ala. 1998) (noting that a jailer "is an employee of the state...and a legal extension of the Sheriff; he helps carry out the statutory duties assigned to Sheriffs.  Therefore, a jailer is entitled to the same immunities").  Further, the absolute immunity available to sheriffs and jailers under § 14 is applicable to tort claims asserted against them both in their official and individual capacities.  *See Tinney v. Shores*, 77 F3d. 378, 383 (11th Cir. 1996) (with respect to claims for conversion and trespass, "[u]nder Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state").  Section 14 immunity also bars tort claims that are premised on malicious or intentional conduct.  *See McMillan v. Johnson*, 88 F.3d 1554, 1571-72 (11th Cir. 1996) (noting the conflicting rulings  in Alabama state courts and the confusion in *Tinny v. Shores*, but holding that as to claims for malicious prosecution, abuse of process, and outrage, "under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity.")

---

[5]Amend. Compl., ¶ 41 (asserting a claim for the "common law right to privacy").

[6]Pl.'s Resp. to Defs.' Mot. to Dismiss, ¶¶ 7, 8.

Pursuant to the Eleventh Circuit's holdings in *Tinney* and *McMillan*, the court finds that Curry and Smitherman have absolute immunity from this claim.

Moreover, even if Defendants were not immune, "the tort of invasion of privacy [is defined] as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Crucher v. Wendy's of North America, Inc.*, 857 So. 2d 82, 95-96 (Ala. 2003).  In Alabama, this tort consists of four limited and distinct wrongs: "(1) intruding into plaintiff's physical solitude or seclusion; (2) giving publicity to private information about plaintiff that violates ordinary decency; (3) putting plaintiff in false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of plaintiff's personality for commercial use."  *Key v. Compass Bank, Inc.*, 826 So. 2d 159, 164 (Ala. Civ. App. 2001).  A defendant is liable for intruding into one's physical solitude or seclusion only when it intrudes into a private place, or has "invaded a private seclusion that the plaintiff has thrown about his person or affairs."  *Id.*  "The wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, by discovering the plaintiff's private affairs through wiretapping or eavesdropping, or by some investigation into the plaintiff's private concerns, such as opening private mail or examining a private bank account."  *Id.*

The Amended Complaint alleges that "[t]he defendants denied...Barbee's common law right to privacy, by preventing Barbee from working at the public jail because she has biracial children and/or because she dates African-American males."  Even if Defendants were not immune from suit, the Amended Complaint does not aver facts that satisfy the elements for invasion of privacy.  Accordingly, Defendants' Motion to Dismiss Count Three is **GRANTED**.

## IV.    Count Four:  Retaliation

11

Count Four asserts a claim for retaliation based on the exercise of free speech,[7] but does not specify any statute to support this claim.  As stated previously in this memorandum, the vehicle for bringing this type of constitutional claim before the court is 42 U.S.C. § 1983.  Because Plaintiff did not articulate § 1983 as a basis for this claim, the Motion to Dismiss is due to be **GRANTED**.[8]

Even assuming, *arguendo*, that the Amended Complaint specified § 1983 as the basis for Count Four, this claim still fails.  Government officials may be shielded from civil liability if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  The U.S. Supreme Court has held that a "necessary concomitant to the question of whether a plaintiff has alleged a violation of a clearly-established federal right is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."  *Maggio v. Sipple*, 211 F.3d 1346, (11th Cir. 2000) (internal quotations omitted).  A public employee's right to free speech is not absolute.  *See Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).  For a public employee's speech to constitute protected speech, it must (1) address a matter of public concern; and (2) the speaker's interest must outweigh the government's interest in promoting the efficiency of the public services.  *See Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v.*

---

[7]The "free speech" at issue refers to the statement Plaintiff gave to the ABI concerning the inmate who allegedly died from a staph infection. *See* Amend Compl., ¶¶ 45, 47, 48.

[8]The court notes that the Amended Complaint utilizes Title VII and § 1981 as grounds for other claims.  However, as stated previously, Title VII does not apply in this case because the Amended Complaint does not allege that Curry and Smitherman were Plaintiff's employers. Section 1981 does not apply because Curry and Smitherman are state actors, and where a defendant is a state actor, § 1983 provides the sole remedy for the violation of rights secured by § 1981.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000).

*Board of Educ.*, 391 U.S. 563, 574-75 (1968).  To address a matter of public concern, the speech

"must relate to any matter of political, social, or other concern to the community."  *Maggio*, 211

F.3d at 1352. "If the government employee speaks not as a citizen upon matters of public

concern, but instead as an employee upon matters only of personal interest, absent the most

unusual circumstances, a federal court is not the appropriate forum in which to review the

wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's

behavior."  *Id*.; citing *Connick*, 461 U.S. at 147.   "The relevant inquiry is not whether the public

would be interested in the topic of the speech at issue but rather is *whether the purpose of the*

*plaintiff's speech was to raise issues of public concern*."  *Id*. at 1353 (internal quotations

omitted) (emphasis added).  To determine the purpose of the speech, the court examines the

"content, form, and context" of the statement.  *Morris v. Crow*, 142 F.3d 1379, 1382 (11th Cir.

1998) (citing *Connick*, 461 U.S. at 147-48) (applying this standard to a motion for summary

judgment).

The Amended Complaint alleges that Plaintiff, when questioned about the inmate who

died, "informed the *Alabama Bureau of Investigation*...that the inmate could not have died from

a staff infection because he did not have any open wounds."[9]  Count Four also contains

allegations that Plaintiff told the ABI "what she had observed and seen on the night of the death

of the inmate"[10] and that the inmate "had no open wounds when she examine [sic] him."[11]  Count

Four does not contain allegations that the purpose of the speech at issue was to "raise issues of

public concern."  Examining the content, form, and context of Plaintiff's alleged speech, the

---

[9]Amend. Compl., ¶ 14 (emphasis added).

[10]*Id*., ¶ 45; *see also* ¶ 48.

[11]*Id*., ¶ 47.

court finds that Plaintiff made the statements directly to ABI investigators in response to their official investigation, and not to raise an issue of public concern.  Because Plaintiff failed to establish that the speech at issue was protected speech, Plaintiff has not alleged a First Amendment violation.  Consequently, the Motion to Dismiss Count Four should be **GRANTED**.

### V.      Count Five:  42 U.S.C. § 1981

Count Five sets forth claims of discrimination and denial of equal protection under § 1981.  As stated previously in this memorandum, discrimination and constitutional claims against state actors must be brought under § 1983.  Defendant's Motion as to Count Five is due to be **GRANTED**.

### VI.     Count Six:  42 U.S.C. § 1983

#### A.      Identification of Defendants

Count Six states a claim for violating the equal protection clause of the Fourteenth Amendment.  Count Six also specifies § 1983 as the vehicle for this claim.  Plaintiff apparently concedes that her claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment.[12]  However, she argues that she still has a valid claim under § 1983 against Defendants in their individual capacities.

Curry and Smitherman state that in Count Six Plaintiff "properly raises a constitutional claim . . . ."[13]  However, they argue that this Count fails to state a claim against Curry and Smitherman because Plaintiff fails to allege which defendants she is referring to when she asserts

---

[12]Resp., ¶ 1 (stating that "[t]he 11th Amendment does not bar suits for *equitable* relief against state officers in their official capacity...") (emphasis added).

[13]Mot. to Dismiss, p. 25.

"the defendants" terminated her.[14]  Moreover, Curry and Smitherman contend that because

Plaintiff worked for Naphcare (as alleged throughout the Amended Complaint), they could not

have terminated her as alleged in Count Six.

 Plaintiff's use of the term "defendants" incorporates <u>all</u> defendants.  Accordingly, Count

Six sufficiently identifies both Curry and Smitherman as parties against whom Plaintiff is

seeking relief under § 1983.  Further, § 1983 does not require that Defendants be Plaintiff's

employer; it is enough if they conspired with Naphcare to terminate Plaintiff in violation of her

constitutional rights.  The question of whether Plaintiff has sufficiently alleged a conspiracy is

analyzed more fully below.

 **B.**  **Qualified Immunity**

  1.  ***Standard of Review***

 Qualified immunity protects government officials performing discretionary functions

from suit in their individual capacities unless the official violates "clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S.

730, 739 (2002).  "The purpose of this immunity is to allow government officials to carry out

their discretionary duties without the fear of personal liability or harassing litigation, . . .

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal

law. . . ."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotations

omitted).  This court recognizes that "[b]ecause qualified immunity is a defense not only from

liability, but also from suit, it is important for a court to ascertain the validity of a qualified

immunity defense as early in the lawsuit as possible."  *Id.* (citing *GJR Invs., Inc., v. County of

Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).  Therefore, a district court should "grant the

---

 [14]*Id.*, p. 26.

defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  Once a defendant shows that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  *Id*.  The Supreme Court articulated a two part test to determine whether qualified immunity is appropriate.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The court first asks "'this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . .  [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.'"  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Saucier*, 533 U.S. at 201).

    2.    ***Discussion***

Plaintiff notes that Defendants have not argued that they were acting within the scope of their discretionary authority.  Indeed, in their initial brief supporting their motion to dismiss (Doc. 24), Defendants argued that the burden for establishing that they were acting within the scope of their discretionary authority is especially low, but they did not actually argue that they *were* acting within their discretionary authority.  Nonetheless, the facts of this case, as alleged in the motion to dismiss, support an assumption that the Defendants' allegedly discriminatory acts that resulted in Plaintiff's termination, were well within their authority as Sheriff and Captain .  The court will thus proceed with an analysis under *Saucier*.

16

The first step of the analysis required by *Saucier* asks whether Plaintiff has alleged facts showing that the officer's conduct violated a constitutional right.  Defendants' argument in this regard focuses on whether Plaintiff's complaint sufficiently states any theory of liability under which they may have violated her constitutional rights.  Defendants argue that the only possibly interpretation of Plaintiff's claim in Count VI is as one for conspiracy under § 1983.  As such, Defendants contend that Plaintiff has failed to articulate a cognizable claim for civil rights conspiracy, and at least has not met the requirement for heightened pleading in § 1983 actions.

In the Eleventh Circuit, claims made under § 1983 against government officials who might be entitled to qualified immunity must satisfy a heightened pleading standard.  Specifically, a plaintiff must "allege with some specificity the facts which make out its claim. . . . This is particularly true in cases involving qualified immunity, where we must determine whether a Defendant's actions violated a clearly established right."  *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998).  With respect to a claim based on conspiracy, particularly one potentially involving questions of qualified immunity:  "[a] plaintiff . . . must make particularized allegations that a conspiracy exists. . . .  Vague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss. . . ."  *Hansel v. All Gone Towing Co.*, 132 Fed. Appx. 308, 309 (11th Cir. 2005) (unpublished opinion, citing *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998) and *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).  "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed."  *Fullman*, 739 F.2d at 557 (citations omitted).  Specifically, "[t]o prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support

the conspiracy.'" *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir.

1992) (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990)).

Paragraph 24 of Plaintiff's Amended Complaint contains an assertion – albeit a bare one

– that Defendants Curry and Smitherman reached an agreement with Naphcare:

> The defendants prevented Barbee from working for Naphcare at
> the jail because she had biracial children and dated African-
> American men.  The defendant, Naphcare, terminated the Barbee's
> [sic] employment at the jail *in agreement with* the Sheriff
> Department and with full knowledge and consent to said racially
> discriminatory and unconstitutional basis for said termination.[15]

In addition, the preceding paragraphs allege that Captain Smitherman and Sheriff Curry told

Plaintiff's supervisors that she was no longer allowed on the premises of the Shelby County

Correctional Facility[16], because she had biracial children and dated African-American men.[17]

Plaintiff also alleged that her employer, Naphcare, "affirmed the decision" of Defendants Curry

and Smitherman, and "knew that the jail personnel wanted to get rid of [her] for having biracial

children and dating African-American males."[18]

The court finds that the statements contained in Plaintiff's Amended Complaint are

sufficient to put Defendants Curry and Smitherman on notice of an alleged conspiracy to

terminate her.  Although inartfully pleaded, the Amended Complaint sufficiently sets out the

---

[15]  Amend. Compl. ¶ 24 (emphasis added).

[16]  Amend. Compl. ¶ 18.

[17]  Plaintiff characterizes Curry's and Smitherman's discriminatory actions as "fir[ing]"
her.  Because this court has found that Plaintiff has not properly alleged that these Defendants
were her employer, the court interprets Plaintiff's use of the word "fire" as reflecting the
Defendants' alleged decision to prohibit her from the jail premises.  Accordingly, Plaintiff's
complaint states that this decision to bar her from the jail was based on her biracial children and
relationships in a number of paragraphs.  Amend. Compl. ¶¶ 20, 21, 23, and 24.

[18]  Amend. Compl. ¶ 21.

nature of that conspiracy – that Defendants Curry and Smitherman told Naphcare that Plaintiff was not allowed on the premises of the correctional facility, for the *express reason* that she had biracial children and dated black men.  As such, at the motion to dismiss stage – at which this court assumes all of Plaintiff's allegations to be true – Plaintiff has sufficiently pleaded that Defendants Curry and Smitherman reached an understanding with her employer, Naphcare, to terminate her on the basis of her interracial relationships.

Accordingly, Plaintiff has established the first prong of the *Saucier* analysis.  The court must now evaluate the second prong:  whether Plaintiff has shown that the constitutional right in question is clearly established. The Court of Appeals has held that the right to intimate association is granted special protection under the First Amendment.  *Cummings v. DeKalb County*, 24 F.3d 1349, 1354 (11th Cir. 1994).  In defining that right, the court stated that "'[a]t a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family-marriage, childbirth, the raising and education of children, and cohabitation with one's relatives.'"  *Id.* (quoting *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994)).  Although the court of appeals has not expressly held that the right is "clearly established," in *Cummings*, it outlined the nature of the right and strongly implied that intimate association under the First Amendment constitutes a "clearly established right" for qualified immunity purposes.[19]  Accordingly, this court finds that Plaintiff has sufficiently alleged that Defendants violated her clearly established constitutional rights.  Defendants, therefore, are not entitled to a defense of qualified immunity.  Nothing in this opinion shall preclude Defendants

---

[19]  The only reason the court of appeals in *Cummings* granted qualified immunity to the defendant in that case was because Plaintiff had not even established that his relationship was of the marital or familial nature protected by the First Amendment.  Here, Plaintiff has alleged discrimination based on the race of her children, a relationship squarely falling under the First Amendment's protections for intimate associations.

Curry and Smitherman from arguing at a later stage that Plaintiff has not established a conspiracy. Such an argument, however, addresses Plaintiff's theory of liability only, not whether Defendants are entitled to qualified immunity. Defendants' motion to dismiss is hereby **DENIED** as to Count Six.

## CONCLUSION

Defendants' Motion to Dismiss is **GRANTED** with respect to Counts One, Two, Three, Four, and Five. Because this is Plaintiff's third opportunity to articulate a case against Defendants Curry and Smitherman, Counts One through Five are **DISMISSED with prejudice**. Defendants' Motion to Dismiss is **DENIED** as to Count Six's constitutional claim under 42 U.S.C. § 1983.

DONE and ORDERED this 9th day of August, 2007.


_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

20